UNITED STATES DISTRICT COURT
For the
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PARKES, WILTON | ) | Case No. |
| V | ) | |
| | ) | |
| CITY OF NEW BRITAIN | ) | |
| OFFICER SGT. JONATHON LAROCQUE | ) | |
| (In his Official and Individual capacities) | ) | |
| OFFICER SAMUEL SABILIA | ) | |
| (In his Official and Individual capacities) | ) | |
| OFFICER THOMAS O'BRIEN | ) | |
| (In his Official and Individual capacities) | ) | |
| OFFICCER LIAM KINAHAN | ) | |
| (In his Official and Individual capacities) | ) | DECEMBER 13, 2022 |

## COMPLAINT

### I. THE PARTIES

**A. The Plaintiff**

1. Wilton Parkes is an individual, a resident of the City of New Britain, and citizen of the state of Connecticut.

**B. The Defendants**

1. The City of New Britain is a municipality and political subdivision within the State of Connecticut with oversight responsibility for the New Britain Police Department and for the enactment and approval of the rules, regulations, ordinances, and policies governing the functions of the New Britain Police Department and conduct of its employees.

2. Sgt. Jonathon LaRocque is employed to the New Britain Police Department and holds the rank of Sergeant and Supervisor for "Felony stops" and at all times relevant acted within his capacity and under color of state law.

3. Officer Samuel Sabilia is employed to the New Britain Police Department and at all times relevant acted within his capacity and under color of state law.

4. Officer Thomas O'Brien is employed to the New Britain Police Department and at all times relevant acted within his capacity and under color of state law.

5. Officer Liam Kinahan is an individual who is employed to the New Britain Police Department and who, at all times relevant, acted within his capacity and under color of state law and also in his personal capacity.

## II.   BASIS OF JURISDICTION

1. This Court has original Jurisdiction based on 28 U.S.C. § 1343(a)(3), and 42 USC 1983; and the Fourth, Fifth, and Fourteenth Amendments to the US Constitution.

2. The Court has supplemental jurisdiction over the state claims pursuant to 28 USC §1367. The state claims asserted herein form part of the same case or controversy as that conferring original jurisdiction under Article III of the United States Constitution.

## III.   SUMMARY OF THE FACTS

1. At or near midnight on December 16, 2020, the plaintiff left home in the city of New Britain heading to work in Windsor Locks, Connecticut.

2. He was driving alone in his newly acquired **blue Mercedes Benz E350** along Chestnut Street, heading towards Route 9N.

3. He came to a stop at the traffic lights at the intersection of Chestnut and Columbus which intersects with the railway tracks. A freight train was crossing.

4. While awaiting the traffic signal and the passing of the freight train, Liam Kinahan an off-duty police officer, was in his vehicle immediately behind plaintiff's car.

5. Unknown to Plaintiff, Liam Kinahan notified Sgt. LaRocque that he was parked behind a "file one," the department's code for stolen vehicle, and that the vehicle was conveniently located for a take down.

6. Sgt. LaRocque activated the city-wide bulletin directing officers to Kinahan's location.

7. As the train passed officers converged on Plaintiff's vehicle from all directions.

8. Officers Sabilia and O'Brien immediately got out of their department vehicles guns in hand and pointing directly at the plaintiff, Sabilia from the driver's side window, while Officer O'Brien through the front windshield, and shouting commands at the plaintiff.

9. Officer Sabilia proceeded to fly open the driver side door, ordered the plaintiff to get out of his vehicle, get on the tarmac face down, and put his hands behind him.

10. Plaintiff complied and, with his face on the asphalt and hands behind him, Officer Sabilia handcuffed him tightly to his wrist.

11. Officer Emily Carrasquillo then approached with a huge Canine (K9 Dony) that proceeded to sniff all over Plaintiff's body while he was handcuffed and lying on the tarmac.

12. Officer Sabilia and another officer then picked up plaintiff from the tarmac, escorted him to officer Sabilia's cruiser, and placed him in the back of the cruiser and locked the door.

13. None of the officers asked the Plaintiff any question or offered any explanation for his stop, seizure, arrest, and detention.

14. The group of five or six officers proceeded to search the plaintiff's personal effects, the entire interior of plaintiff's car and the trunk.

15. Nothing illegal was discovered and the police determined that plaintiff's vehicle was properly registered to him, and the vehicle was not stolen.

16. After this 25-minute ordeal, the officers explained that his vehicle was mistakenly identified as a stolen vehicle which was described as a **grey 2016 Mercedes Benz E350**.

17. The officers released Plaintiff from custody and allowed him to leave the scene.

18. Plaintiff was so traumatized by the frightening encounter that he could not continue to his

workplace.

19. He returned home and remained isolated home for some days.

20. On or about January 25, 2021, Plaintiff filed a civilian complaint with the New Britain Police Department regarding the incident.

21. The ensuing administrative investigation by the New Britain Police Department concluded, in part, that:

> [T]here was little to no supervision on scene, which led to much confusion with the officers in regard to who was gathering information on whether the vehicle was stolen … Mr. Parkes was not informed of the reason for his detention and was not questioned as to the ownership of the vehicle until the conclusion of the investigation. Officer Sabilia did not have verbal consent to go into the trunk of Mr. Parkes vehicle … Sergeant LaRocque failed to give direction to officers, and failed to relay information to Officers on scene that the vehicle was a stolen vehicle immediately upon learning this information in violation of Policy 2.04 Authority and Responsibility Section D."

*New Britain Police Department Administrative Investigation: IA21-03, Lt Paula Keller (#328), April 9, 2021.*

## IV. STATEMENT OF CLAIMS

### COUNT ONE: UNREASONABLE SEARCH AND SEIZURE

1-21. The immediately preceding statement of facts contained in Paragraphs 1 through 21 are herein referenced, incorporated, and repeated as paragraphs 1-21 of this Count One.

22. The action of the police officers violated established department policy and procedures governing investigative stops of the type in this case, to wit:

"NBPD Policy 1.06 Investigatory Stops section C, Procedures for Initiating an Investigatory stop:
d. Officers shall confine their questions to those concerning the suspect's identity, place of residence, and other inquiries necessary to resolve the officer's suspicions. However, in no instance shall an officer detain a suspect longer than is reasonably necessary to make these limited inquiries and resolve suspicions."

23. Abidance with department policy and procedures would have terminated the stop within

three minutes of its inception without the seizure, detention, and wrongful arrest of the plaintiff because the evidence refuting the officer's asserted reason for the stop was readily available. The color and VIN number of plaintiff's car was different from that of the allegedly stolen vehicle; and the plaintiff's identity could be immediately ascertained by asking for his driver's license and registration which he had within his possession.

24. The basis for the officers' stop was false and the duration and scope of the police action was excessive and unjustified.

25. The actions and omissions of the police officers deprived the Plaintiff his right to be free of unreasonable searches and seizures guaranteed by the Fourth Amendment to the US Constitution and Article First, sec, 7 of the Connecticut Constitution.

26. As a direct result of the officers' actions and omissions, the plaintiff suffered emotional trauma, humiliation, and disruption of his lawful activities.

**COUNT TWO:   FAILURE TO INTERVENE (v Sgt LaRocque and Officer O'Brien)**

1-26. Paragraphs 1through 26 of Count One are herein referenced, incorporated, and repeated as paragraphs 1-26 of this Count Two.

27. Sgt. LaRocque and Officer O'Brien were in possession of information very early in the investigation that the plaintiff's car did not fit the description of the stolen car on their "hot list."

28. The stolen car was described as "gray." Immediately upon arrival on the scene, Officer O'Brien observed that that the plaintiff's car was blue. Within 2-3 minutes of the stop, Sgt LaRocque learnt that the VIN number did not match that of the stolen car and that the car was legitimately registration to the plaintiff.

29. Nevertheless, officer O'Brien and Sgt. LaRocque participated in and allowed the unlawful

Stop, seizure, and detention of the plaintiff to continue.

30. As a direct result of the defendants' failures and omissions officer Sabilia, and others continued to detain the plaintiff, searched his vehicle, placed him under arrest.

31. As a result, Plaintiff suffered emotional trauma and damages.

**COUNT THREE: INADEQUATE SUPERVISION (v Sgt. LaRocque)**

1-31. Paragraphs 1 through 31 of Count Two are herein referenced, incorporated, and repeated as paragraphs 1-31 of this Count Three.

32. Sgt LaRocque was the supervisor for the operation involving the stop, detention, and arrest of the plaintiff and search of his automobile.

33. He was present on the scene and participated in the operation.

34. He provided little or no supervision or direction to the officers under his command.

35. As a result, the officers were confused, there was no clear designation of tasks and responsibilities in keeping with department policy for the conduct of investigatory stops.

36. There was no communication or any attempt by the officers to determine his identity, the identity of the vehicle, and the reason for the stop.

37. Sgt. LaRocque's failure to adequately supervise was a substantial factor and a proximate cause of the plaintiff being subjected to an unjustified seizure, search, and detention in violation of his civil rights guaranteed by the Fourth Amendment to the US Constitution and Article First, sec 7 of the Connecticut Constitution.

38. As a result of Officer LaRocque's failures and omissions in supervising the officers under his command at the scene, the plaintiff suffered damages.

**COUNT FOUR: FALSE ARREST (V Officers O'Brien and Sabilia)**

1-38. Paragraphs 1 through 38 of Count Three are herein referenced, incorporated, and repeated as

paragraphs 1-38 of this Count Four.

39. Officers O'Brien and Sabilia forcefully detained and arrested Plaintiff without probable cause.

40. Officer Sabilia extended Plaintiff's detention even after having knowledge Plaintiff was not a suspect and there was no lawful basis for his arrest.

41. Officer Sabilia extended Plaintiff's detention to conduct an illegal search of the plaintiff's car in the hope he would find incriminating evidence that would provide cover for his unlawful conduct.

42. As a direct result of the acts and omissions of Officers O'Brien and Sabilia, the plaintiff suffered damages.

**COUNT FIVE: NEGLIGENCE (v Liam Kinahan in his official and personal capacities)**

1-42. Paragraphs 1 through 42 of Count Four are herein referenced, incorporated, and repeated as paragraphs 1-42 of this Count Five.

43. Officer Kinahan set the entire operation into motion by his initial report to Sgt LaRocque In which he identified plaintiff's car as the stolen gray Mercedes Benz on their "hot list."

44. Officer Kinahan failed to carefully scrutinize the color of the vehicle before calling in his report to Sgt LaRocque.

45. Even after calling in his report, Officer Kinahan had sufficient time to carefully scrutinize plaintiff's vehicle and correct his erroneous report but failed to do so.

46. But for the mistaken identity reported by Officer Kinahan the entire operation would not have occurred.

47. As a direct result of Officer Kinahan's carelessness, failures, and omissions the plaintiff suffered damages.

**COUNT SIX: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (all defendants)**

1-47. Paragraphs 1 through 47 of Count Five are herein referenced, incorporated, and repeated as paragraphs 1-47 of this Count Six.

48. Defendants knew, or should have known, that his conduct or misconduct- including misconduct of omission and commission-involved an unreasonable risk of causing emotional distress to Plaintiff.

49. Moreover, defendants knew or should have known that such emotional distress, if caused, might result in illness or emotional injury to the Plaintiff.

50. Plaintiff did suffer emotional/psychological trauma, fear, shock, and isolation.

51. Defendants' actions were the proximate cause of Plaintiff's emotional/psychological trauma, fear, shock, and isolation.

**COUNT SEVEN: INDEMNIFICATION PURSUANT TO C.G.S. §7- 465.**

1-51. Paragraphs 1 through 51 of the preceding counts describe acts committed by employees of the City of New Britain acting in their official capacities, within the scope of their employment, and under color of state law.

52. Said allegations do not involve willful or wanton acts.

53. The city is obligated to indemnify each employee for all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damage caused to Plaintiff which occurred while such employee was acting in the performance of his/her duties and within the scope of his/her employment.

54. Pursuant to C.G.S. § 7-465, Plaintiff served a timely Notice of Suit upon the Clerk for the City. Attached hereto.

**COUNT EIGHT: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

1-47. Paragraphs 1 through 47 are herein referenced, incorporated, and repeated as

paragraphs 1-47 of this Count Eight.

48. Defendants' conduct, as herein described, was extreme and outrageous.

49. Defendants knew, or should have known, that emotional/psychological distress would likely result from their unlawful use of force and frightening conduct.

50. Plaintiff did suffer emotional/psychological trauma as a result of defendants' actions.

51. Defendants' actions were the direct and proximate cause of Plaintiff's emotional/psychological injury.

**COUNT NINE: RECKLESSNESS (v Sgt. LaRocque, Officers Sabilia, and O'Brien in their official and personal capacities)**

1-21. Paragraphs 1-21 of the statement of facts are herein referenced, incorporated, and repeated as paragraphs 1-21 of this Count Nine.

22. Officers Sabilia, O'Brien, and Sgt LaRocque acted with callous disregard for the rights and safety of the plaintiff.

23. The actions and omissions of said defendants were deliberate, willful, and wanton, in that they were highly unreasonable, involving an extreme departure from department policy that establishes the standard of care under the circumstances.

24. The prevailing situation involved a high degree of danger to the safety of the plaintiff and said danger was apparent.

25. The named defendants knew or should have known of the risks of danger posed by said actions and omissions but made a conscious choice to ignore said risks.

26. Because of the defendants' willful, wanton, or reckless conduct, the plaintiff suffered damages.

**V.    RELIEF**

The Plaintiffs prays for one or more of the following forms of relief:

i)    Compensatory damages;

ii) Punitive Damages;

iii) Attorney's fee and costs pursuant to 42 USC §1988;

iv) Such other and further relief as in law or equity would pertain.

## VI. AMOUNT IN DEMAND

The amount in demand, exclusive of fees and costs, is more than Thirty-Five Thousand Dollars ($35,000.00), not inclusive of punitive damages, fees, and costs.

## VII. JURY DEMAND

The plaintiffs request a Trial by Jury.

## VIII. CERTIFICATION

Under FRCP Rule 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with Rule 11.

Date: December 13, 2022.

Signed: /s/ ecm ct26687
Elio C. Morgan
Law Office of Elio CC Morgan
1000 Lafayette Boulevard, 11th Floor
Bridgeport, CT 06604
Tel: 203-333-1122; Fx: 203-332-9689

# Law Offices of Elio C. C. Morgan, LLC



Elio C. C. Morgan
*Attorney At Law*

eliolaw.com

1000 Lafayette Blvd.
Suite 1100
Bridgeport, CT 06604

P.O. Box 55138
Bridgeport, CT 06610

May 13, 2021

## NOTICE OF INTENT TO SUE

To: Town Clerk
City of New Britain
27 West Main Street
Room 109
New Britain, CT 06051

Dear Madam Clerk:

This law firm represents the Claimant, Wilton Parkes. Notice is hereby served upon you and the City of New Britain in accordance with Connecticut General Statutes (CGS) section 7-465 of the below named Claimant intention to commence a civil action against the City premised upon the following facts and claims:

CLAIMANT: **Wilton Parkes**

DATE & TIME: **December 16, 2020, aprox. 12:30 am**

PLACE: **Chestnut Street and Columbus Blvd, New Britain, CT.**

## DESCRIPTION OF OCCURRENCE

The details of the occurrence are described in the attached Complaint that was submitted to the New Britain Police Department on or about January 25, 2021; and during an in-person meeting with Captain Paula Keller on or about February 25, 2021.

The Claimant,

By _____
Elio Morgan, Esq.

DIRECT (203) 333-1122    OFFICE (203) 683-3401    FAX (203) 332-9896    CELL (860) 985-4937
eliolaw@optimum.net

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Town Clerk
City of New Britain
27 W. Main Street, Rm 109
New Britain, CT 06051

9590 9403 0430 5163 5893 04

2. Article Number (Transfer from service label)

7020 0090 0001 1639 7960

PS Form 3811, April 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X M. Halse   ☐ Agent  ☐ Addressee

B. Received by (Printed Name): M. Halse
C. Date of Delivery: 5/17/21

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt